## EX PARTE CROUSE.

*Habeas corpus — Collateral attack — Commitment to children's home — Order in contempt unauthorized, when — Refusal of witness to answer.*

Children having been placed in a children's home under commitments of a court having competent jurisdiction, by proceedings regular in all particulars, a writ of *habeas corpus* cannot issue from another court on the ground that such children are unlawfully restrained of their liberty, where there is no showing in the *habeas corpus* proceeding that the commitments by which the children are held are void for illegality and where no proceeding in error was prosecuted from the court of domestic relations on the ground of irregularity. Therefore a witness in such *habeas corpus* proceeding cannot be committed to jail for contempt for refusing to answer certain questions.

(Decided June 6, 1921.)

IN HABEAS CORPUS: Court of Appeals for Hamilton county.

*Mr. John C. Hermann* and *Mr. Herbert E. Ritchie,* for petitioner.

*Mr. Wm. F. Fox* and *Mr. Eli G. Frankenstein,* for respondents.

CUSHING, J.   On April 12, 1921, a writ of *habeas corpus* was issued by this court. The petition stated that the petitioner, Meigs V. Crouse, was illegally restrained and deprived of his liberty by Ferd Bader, sheriff of Hamilton county, Ohio. The sheriff answered that he held the petitioner, Crouse, under a commitment of Judge Joseph B. Kelley, of the court of insolvency of Hamilton county, Ohio, on the charge of contempt of court.

A copy of the commitment was attached to the answer. The commitment contained the following:

"That the said Meigs V. Crouse stand committed to the county jail of Hamilton County, Ohio, until such time as said Meigs V. Crouse signifies his willingness to answer certain questions."

Crouse was committed to jail for contempt in refusing to answer the questions stated below, in case No. 9437 of the court of insolvency.

The controversy arose out of a commitment by the juvenile court of Hamilton county, Ohio, in case No. 16655 of that court, wherein five children had been committed to the Children's Home, of which Crouse was superintendent. The record is that on May 20, 1920, the following children of the ages stated, Marie Anderson, 14 years of age; James Charles Anderson, 9 years of age; Mary Frances Anderson, 7 years of age; Florence Henrietta Anderson, 5 years of age; and India Ruth Anderson, subsequently deceased, were adjudged dependents and committed to the Children's Home.

The proceeding in the insolvency court was in *habeas corpus*, and it is claimed that the children named, except India Ruth Anderson, were unlawfully restrained of their liberty. At the hearing it was made to appear that all of the children were in the Children's Home under commitments by the court of common pleas, division of domestic relations, regular in all particulars; that that court had determined that the children were dependents, as provided under the commitments, and had ordered A. C. Crouse to deliver the children to Meigs V. Crouse, the superintendent of the Children's Home, and that they remain in the care and custody of the

Children's Home, or its assigns, until arriving at the age of 21 years, and that said superintendent of the Children's Home should also hold such children subject to the provisions of the law in such cases made and provided. The children were received at the Children's Home, and receipted for by M. V. Crouse, its superintendent. Each of the commitments was in the form stated, except as to India Ruth Anderson, and she was placed in the charge of Ethel M. Brotten.

The court of insolvency issued a writ of *habeas corpus* for the said children, claiming that they were unlawfully restrained of their liberty.

At the hearing of the case in the court of insolvency, Meigs V. Crouse, having been duly sworn, was asked the following questions:

"Q. I will ask you what you did with Mary Frances Anderson?

"A. I placed her in a foster home.

"Q. Where?

"A. I decline to answer."

On this state of the record, it is claimed by counsel for respondents that the court of insolvency has jurisdiction in *habeas corpus* cases, and, therefore, has a right to punish for contempt for a failure to answer any question put to a witness. The law is stated in *Ex parte Malcolm Jennings,* 60 Ohio St., 319. Judge Shauck, delivering the opinion of the court, at page 329, says:

"Accordingly the settled law upon the subject is as stated in Church on Habeas Corpus, section 319: 'The law has not invested such officers (notaries public) with arbitrary and omnipotent power to

compel a witness to answer all questions however incompetent, irrelevant, immaterial or inadmissible. A refusal to answer such questions is not necessarily a contempt.' "

It was shown that the Children's Home and Crouse, its superintendent, held the children under lawful commitments from the court of domestic relations. A *habeas corpus* would, therefore, not lie in such case unless it is first shown that the proceeding in the court of common pleas, division of domestic relations, was void for illegality. It is claimed that there was some irregularity in entering the judgment of the court of common pleas, and that for that reason it was defective. The law is that a proceeding defective for irregularities may be reversed on error; a proceeding void for illegality is the only one that gives authority to discharge on *habeas corpus* (Hurd on Habeas Corpus [2 ed.], 327; *Ex parte Watkins*, 3 Peters [28 U. S.], 193) where commitments have been made by a duly constituted court, having jurisdiction in the premises. In this proceeding the record fails to disclose that there was a showing in the court of insolvency that the commitments by which the children were held in the Children's Home were void for illegality. And no proceeding in error was prosecuted from the court of common pleas, division of domestic relations, on the ground of irregularity. The record is silent as to Crouse's authority for placing Mary Frances Anderson in a foster home. If it was the act of a corporation, the question asked Crouse was not a proper question, and on that ground he would not be required to answer.

A proceeding in *habeas corpus* cannot be used to collaterally attack a judgment of a court of coordinate jurisdiction. The prisoner will, therefore, be discharged.

*Prisoner discharged.*

HAMILTON, P. J., and BUCHWALTER, J., concur.